IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| Brenda Lee Roberts, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:12cv958 (LO/TRJ) |
| | ) | |
| Michael J. Astrue, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

This matter is before the court on the parties' cross-motions (nos. 11, 13) for summary

judgment and plaintiff's alternative motion (no. 14) to remand, which have been referred to the

undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B).  Pursuant to 42 U.S.C. §

405(g), plaintiff Brenda Lee Roberts ("Roberts") seeks judicial review of the final decision of

defendant, the Commissioner of the Social Security Administration, denying her claim for

disability insurance benefits.  For the reasons stated below, the magistrate judge finds that

defendant's decision failed to apply the correct law and was not supported by substantial evidence,

and accordingly recommends that the court grant summary judgment for plaintiff and deny

summary judgment for defendant.

## I.

Plaintiff filed concurrent applications for Social Security Disability insurance benefits

("DIB") and Supplemental Security Income benefits ("SSI") on September 29, 2005, alleging

disability since May 15, 2004.  R. at 304-306; 593-595.  Plaintiff's application was denied initially on January 6, 2006, and again was denied upon reconsideration on March 27, 2006. R. at 293-295; 298-300.  Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on March 16, 2007, but a transcript of which was not made part of the certified administrative record.  The ALJ found that plaintiff was not disabled, and on that basis denied plaintiff's claim on May 14, 2007.  R. at 67-78.

Plaintiff requested a review of the ALJ's decision, and on February 6, 2008 the Appeals Council vacated the ALJ's decision and remanded the claim.  R. at 63-66.  The ALJ held a second hearing on May 29, 2008.  R. at 599-621.  He again found plaintiff not disabled, and denied plaintiff's claim is his decision dated October 20, 2008.  R. at 52-62.

Plaintiff requested a review of the ALJ's decision, and on April 17, 2009, the Appeals Counsel again vacated and remanded for further proceedings, this time to another administrative law judge.  R. at 48-51; 103.  (Hereinafter, all references to "the ALJ" are to the second administrative law judge unless otherwise specified.)

The Appeals Counsel directed the ALJ to obtain additional evidence on plaintiff's depression and bipolar disorder; evaluate plaintiff's mental impairments as required by the "special technique" in the Regulations; if necessary, obtain evidence from a medical expert; further evaluate the claimant's subjective complaints; give further consideration to the claimant's maximum residual functional capacity ("RFC"); and, obtain supplemental evidence from a vocational expert. R. at 50-51.

The ALJ held a hearing on November 5, 2009, and in a decision dated January 19, 2010, found plaintiff disabled as of December 1, 2008, but not any time prior.  R. at 27-47; 622-654.  On this basis, the ALJ granted plaintiff SSI as of December 1, 2008, but denied plaintiff's claim for

DIB because she did not establish that she was disabled prior to her date last insured of June 30, 2007.  R. at 46-47.

(In order to qualify for DIB, one must be disabled and insured for benefits. 42 U.S.C. § 423(a)(1)(A) and (C); 20 C.F.R. § 404.101, 404.120, and 404.315(a).  The last date a person meets the insured requirement is commonly referred to as the date last insured.  The parties dispute the date of plaintiff's onset of disability; however the ALJ found and there is no dispute that June 30, 2007 is plaintiff's date last insured.  R. at 36.  Therefore, to qualify for DIB, plaintiff's disability must have begun on, or before, June 30, 2007.  SSI, unlike DIB, lacks a requirement of being insured for benefits, but requires financial need.  The definition of disability is the same for both. 20 C.F.R. § 416.202.)

Plaintiff again requested review of the ALJ's decision, but on May 23, 2012, the Appeals Council denied the request for review, thus making the decision final.  R. at 13-16, 190-283.

## II.

The ALJ found plaintiff disabled as of December 1, 2008.  However, plaintiff's testimony at the most recent hearing was limited to her condition as of then (November 5, 2009), rather than past limitations.  Therefore the testimony is not relevant to the question whether plaintiff was disabled at the prior time that is the subject of dispute.  R. at 633-647.  Moreover, the transcript from the earlier hearing, held on March 16, 2007, was not made part of the certified administrative record.  Therefore, the magistrate judge is unable to review the statements made by plaintiff at that time.  As summarized by the first ALJ in his opinion dated May 14, 2007, plaintiff's earlier testimony regarding her symptoms and limitations was as follows:

[T]he claimant testified that she last work [sic] as a bakery assistant.  She

3

stated that she lost that job because of back pain and other problems.  She stated
that she lives with her sister, who helps her with household chores.  She stated that
on a typical day, she relaxes to keep from hurting, moves around and takes naps.
She stated that she does not wear a back brace and that her medication helps the
back pain; but that the treatments for arthritis and fibromyalgia do not make any
difference.  She stated that she experiences sharp, aching pain in her lower back,
and sharp pain in her legs that comes and go [sic].  She stated she has side effects of
medication including irritable [sic], nausea, and dizziness.  She stated that when she
is depressed, she feels sad, avoids people, cries and eats a lot of chocolate.  R. at 75.

Plaintiff's relevant medical history comes primarily from the reports of two treating sources

- Dr. Abdullah Farooque and Nurse Roselle Stark - as well as several other relevant reports.  Dr.

Farooque was plaintiff's treating provider for her physical ailments, and began treating plaintiff in

2005.  R. at 38, 520.  Most of Dr. Farooque's handwritten notes are illegible, but at certain points

he filled out reports that the magistrate judge finds illustrative.  In one such report, dated January

25, 2006, Dr. Farooque diagnosed fibromyalgia, hypothyroidism, and osteoporosis.  R. at 448.  He

found that plaintiff was limited to lifting no more than 5 pounds, standing for no more than 1 hour

at a time, walking no more than 50 feet at a time, climbing no more than four to six steps; was

limited in her ability to drive, bend over, stoop down, reach for objects; and had limitations

regarding her ability to engage in manual dexterity activities.  R. at 449.  The doctor stated that he

had advised plaintiff to apply for disability benefits and take a leave of absence from work due to

medical reasons.  *Id*.  (However, Dr. Farooque also indicated that as of then plaintiff would be able

to work in a limited capacity, and that he anticipated the duration plaintiff's condition would be

only 60 to 90 days.  R. at 448.)

Thereafter, plaintiff visited Dr. Farooque regularly, including a total of at least 8 times prior

to her date last insured of June 30, 2007.  R. at 175-182.  Plaintiff regularly complained of chest

and back pain, and often included complaints of pain all over her body, including her lower

extremities and both arms.  R. at 180-182, 520-521.  During this period, Dr. Farooque found

4

plaintiff suffered from the following conditions: chronic back pain; fibromyalgia; depression; anxiety disorder; chronic arthritis; irritable bowel syndrome; a sleeping disorder; and hiatal hernia esophagitis.  R. at 175-182, 520-521.  A radiology report of an MRI conducted on plaintiff dated March 6, 2007 indicated spondylosis with some mild disk bulging.  R. at 492.  A study dated February 12, 2007 revealed findings consistent with mild bilateral carpal tunnel.  R. at 494-497.

In his Fibromyalgia Impairment Questionnaire dated April 2, 2007, Dr. Farooque found that plaintiff was limited to sitting for 1 hour, standing/walking for 2 hours, frequently lifting up to 5 pounds and occasionally carrying up to 10 pounds in an 8-hour competitive workday on a sustained basis.  R. at 523.  Dr. Farooque also found that plaintiff needed to avoid temperature extremes, humidity, heights, pushing, pulling, kneeling, bending and stooping, and that she was "incapable of even 'low stress' jobs".  R. at 523, 525.  He further found that these limitations were applicable since October 4, 2005.  R. at 525.

With regard to plaintiff's mental condition, plaintiff's Intake Biographical Data Packet from Prince William Family Counseling, P.C. on March 13, 2006 indicates that plaintiff presented symptoms of low self-esteem and anger.  R. at 503.  Plaintiff exhibited partially impaired insight, and impaired judgment, impulse control, memory, concentration and attention.  R. at 504.  Plaintiff also had delusions and exhibited paranoia.  *Id*.  At that time, plaintiff was assigned a current GAF score of 55.[1]  R. at 506.  Plaintiff was evaluated at Prince William Family Counseling, P.C. several additional times from April 3, 2006 through May 9, 2006, but the progress notes are mostly illegible.  R. at 498-502.

---

[1] A GAF score of 51-60 denotes "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (few friends, conflicts with peers/co-workers)."  *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. Text Revision 2000) ("DSM").

Nurse Stark had been treating plaintiff at Prince William Family Counseling, P.C. since March 13, 2006, and began treating plaintiff at Salveo Consulting, PLLC on February 26, 2007.[2] R. at 491, 529.  The reports from Nurse Stark in the administrative record during her time at Salveo Consulting that predate plaintiff's date last insured were completed on February 26, 2007, March 7, 2007, March 14, 2007 and March 21, 2007.  R. at 484-490, 529-536.  On February 26, 2007, on plaintiff's Intake Biographical Data Packet from Salveo Consulting, Nurse Stark described plaintiff as having an "explosive" temperament, and suffering from depression and bipolar disorder.  R. at 486.  Nurse Stark described plaintiff's degree of impairment as "severe." *Id*.  According to the report, plaintiff's mental status was sad, her mood depressed, her judgment, impulse control, memory, concentration and attention all impaired.  R. at 487.  Nurse Stark assigned plaintiff a GAF score of 55 at that time.  R. at 490.  On March 7, 2007, Nurse Stark again met with plaintiff, who described herself as being in chronic pain, and she reportedly cried throughout the session.  R. at 485.

---

[2]  The ALJ dealt with the opinions of Nurse Stark as a "treating provider."  R. at 39. According to the Commissioner's regulations, Nurse Stark would not be deemed an "acceptable medical source" under 20 C.F.R. §§ 404.1513(a) and 416.913(a), so Nurse Stark's opinion evidence would not be weighed in the same manner as that from an "acceptable medical source," such as a "treating physician."  That said, SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2006) makes clear that, "[o]pinions from these medical sources [such as nurse practitioners and other medical providers], who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."  In fact, in SSR-06-03P, the Commissioner found that "...depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source. "  *Id*.  The suggested factors that may be considered in weighing such opinion evidence include: "How long the source has known and how frequently the source has seen the individual; How consistent the opinion is with other evidence; The degree to which the source presents relevant evidence to support an opinion; How well the source explains the opinion; Whether the source has a specialty or area of expertise related to the individual's impairment(s); and Any other factors that tend to support or refute the opinion."  *Id*.

Nurse Stark also wrote a letter outlining her impressions of plaintiff's condition on March 15, 2007.  R. at 491.  In that letter, Nurse Stark described plaintiff's physical symptoms and indicated that they were causing plaintiff "a great deal of pain and stress and are severely debilitating to her."  *Id*.  Nurse Stark also indicated that plaintiff suffered from bipolar disorder and chronic pain, and that this led to "explosiveness and impulsivity."  *Id*.  It was noted that plaintiff had suffered from "a great deal of abuse in her life," resulting in her current state of depression. *Id*.[3]

On March 21, 2007, Nurse Stark filled out an Impairment Questionnaire for plaintiff in which she described plaintiff as being bipolar, suffering from severe pain and stress, as well as paranoid delusions, difficulty thinking or concentrating, suicidal ideation numerous times in the past, auditory and visual hallucinations, intrusive recollections of a past traumatic experience, and

---

[3] It is not clear from Nurse Stark's notes at that time what sort of abuse plaintiff suffered earlier in life, but Nurse Stark's notes from March 21, 2007 indicate that plaintiff was "physically beaten in [the] 1990s."  Notes from Dr. Roy Wilensky (who evaluated plaintiff at the request of the ALJ on August 8, 2009) clarify that plaintiff was gang-raped as a teenager and beaten by her boyfriend in about 1997.  R. at 184, 536.

Plaintiff also reported to Dr. Wilensky that her son was sexually abused by an adult male neighbor in about 2006.  R. at 184.  Dr. Wilensky assigned plaintiff a GAF score of 50.  R. at 185. Nurse Stark reported the effect of learning this information on plaintiff in her report dated December 1, 2008, indicating that plaintiff's condition had severely deteriorated - her mood swings had increased, controlling her anger was more difficult, her sleep disturbances had worsened - and Nurse Stark assigned plaintiff a GAF score of 40 at that time.  R. at 154.  Plaintiff testified at the hearing on November 5, 2009, that she first learned of the molestation of her son in January of 2007.  R. at 643.

The magistrate judge notes that a GAF score of 41-50 is indicative of "serious symptoms (e.g.. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *DSM* at 34. Also, a GAF score of 40 indicates "Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." *Id*.

having mood swings, poor memory, sleep and mood disturbances.  R. at 529-530.  Nurse Stark

opined that plaintiff was markedly impaired (defined as effectively precluded from performing the

activity in a meaningful manner) in her ability to perform activities within a schedule; maintain

regular attendance and be punctual within customary tolerance; sustain ordinary routine without

supervision; work in coordination with or proximity to others without being distracted by them;

make simple work-related decisions; complete a normal workweek without interruptions from

psychologically based symptoms and to perform at a consistent pace without an unreasonable

number and length of rest periods; interact appropriately with the general public; accept

instructions and respond appropriately to criticism from supervisors; get along with coworkers or

peers without distracting them or exhibiting behavioral extremes; and respond appropriately to

changes in the workplace.  R. at 532-533.

Plaintiff was also described in the report as moderately limited (defined as significantly

affecting but not totally precluding the individual's ability to perform the activity) in her ability to

remember locations and work-like procedures; understand and remember detailed instructions;

maintain attention and concentration for extended periods; and maintain socially appropriate

behavior and to adhere to basic standards of neatness and cleanliness.  *Id*.  Plaintiff also

experienced episodes of deterioration or decompensation in work or work-like settings causing her

to withdraw from work situations and/or an exacerbation in the signs and symptoms described.  R.

at 534.  Nurse Stark estimated that plaintiff was likely to be absent from work more than three

times monthly, that plaintiff's psychiatric condition exacerbated her physical symptoms, and that

plaintiff was "incapable of even 'low stress'" in a work environment.  R. at 535-536.  Plaintiff was

assigned a GAF score of 55 in this report.  R. at 529.

8

**III.**

In accordance with 20 C.F.R. § 416.920(a), the ALJ proceeded with the five-step disability inquiry, determining in sequence (1) whether plaintiff is engaged in substantial gainful activity; (2) whether plaintiff has a severe impairment; (3) whether plaintiff has a severe impairment meeting the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) plaintiff's residual functional capacity ("RFC") to perform past relevant work; and (5) plaintiff's RFC to perform any work.  R. at 15-29.

The ALJ found that from plaintiff's alleged onset date of May 15, 2004 through her date last insured of June 30, 2007, plaintiff (1) did not engage in substantial gainful activity; (2) had severe impairments, namely bipolar disorder, post traumatic stress disorder (PTSD), chronic arthritis, fibromyalgia, irritable bowel syndrome, chronic back disorder, and right foot injury; (3) did not have a severe impairment meeting the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) did not have the RFC to perform any past relevant work; but (5) had the RFC to perform the full range of sedentary, unskilled work.  R. at 36-37, 44.

In making his RFC determination, the ALJ found that while plaintiff's medically determinable impairments could reasonably be expected to cause plaintiff's alleged symptoms, the plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible prior to December 1, 2008.  R. at 38.  After reviewing the medical observations and filings, as well as the opinion evidence presented in the record, the ALJ concluded that the record as a whole only supported plaintiff's claim of disability as of December 1, 2008.  R. at 38-41.

Based on the testimony of a vocational expert, the ALJ then found that, prior to plaintiff's established onset date of disability of December 1, 2008, there were jobs existing in significant

numbers in the national economy that plaintiff could have performed.  R. at 45-46.  Accordingly,

the ALJ found that plaintiff was not disabled prior to December 1, 2008 within the meaning of the

Social Security Act.  R. at 46.

These proceedings are described in more detail below.

## IV.

Plaintiff challenges the ALJ's decision on three grounds:  (1) the ALJ failed to present a

hypothetical to the vocational expert consistent with the RFC found for plaintiff during the period

at issue; (2) the ALJ failed to properly weigh the medical evidence and failed to properly consider

plaintiff's onset as required by Social Security Ruling 83-20; and (3) the ALJ failed to properly

evaluate plaintiff's credibility.

The task of this court is not to review the ALJ's decision *de novo*; rather, it is to determine

whether the ALJ's decision is supported by substantial evidence and whether he applied the correct

law.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (citations omitted).  Substantial

evidence is "'evidence which a reasoning mind would accept as sufficient to support a particular

conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a

preponderance.'"  *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

## A.

Plaintiff's first argument is that the ALJ's hypothetical to the vocational expert failed to

accurately reflect the ALJ's own findings regarding plaintiff's RFC.  For defendant to accept

evidence from a vocational expert indicating that a claimant is not disabled, the vocational expert's

testimony "must be based upon a consideration of all other evidence in the record, and it must be in

response to proper hypothetical questions which fairly set out all of claimant's impairments."

*Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) (quoting *Walker v. Bowen*, 889 F.2d 47, 50

(4th Cir.1989).

The ALJ found that plaintiff retained the RFC to perform sedentary work, except that she

could sit no more than 2 hours out of an 8-hour workday and no more than 10 minutes at one time,

she could lift 10 pounds frequently and 20 pounds occasionally, she could not push or pull more

than 10 pounds, she could only occasionally climb, balance, kneel, crouch, crawl, bend, and stoop,

she needed to avoid concentrated exposure to vibration, dusts, fumes, odors, and gases, and she had

moderate limitations in concentration, persistence and pace.  R. at 37.  However, the hypothetical

posed by the ALJ to the vocational expert did not include the ALJ's finding that plaintiff could not

sit more than 2 hours out of an 8-hour workday and no more than 10 minutes at one time.  R. at 37,

649-650.

Sedentary work is defined as follows in the regulations:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally
lifting or carrying articles like docket files, ledgers, and small tools. Although a
sedentary job is defined as one which involves sitting, a certain amount of walking
and standing is often necessary in carrying out job duties. Jobs are sedentary if
walking and standing are required occasionally and other sedentary criteria are met.
20 C.F.R. §§ 404.1567(a), 416.967.

According to the direction provided by the Social Security Administration's prior rulings, in

interpreting the term "occasionally" in Sections 404.1567(a) and 416.967 with regard to walking

and standing:

"Occasionally" means occurring from very little up to one-third of the time. Since
being on one's feet is required "occasionally" at the sedentary level of exertion,
periods of standing or walking should generally total no more than about 2 hours of
an 8-hour workday, and sitting should generally total approximately 6 hours of an
8-hour workday. Work processes in specific jobs will dictate how often and how
long a person will need to be on his or her feet to obtain or return small articles.
SSR 83-10, 1983 WL 31251 (Jan. 1, 1983).

Defendant argues that the ALJ's finding in the RFC that plaintiff could sit only two hours per day was an error, which it says was obviously inadvertent and harmless. However, it is not apparent from the record that the ALJ misspoke. The ALJ stated clearly in his findings of fact and conclusions of law that, prior to December 1, 2008, plaintiff was restricted to sitting no more than two hours in an eight-hour work day. R. at 37. This is consistent with Dr. Farooque's finding in his report of April 2, 2007, that plaintiff was restricted to sitting no more than one hour in a normal work day. R. at 523. Neither level of this restriction was posed to the vocational expert when the ALJ asked whether an individual with plaintiff's capabilities and restrictions would be capable of performing sedentary work. R. at 648-649. As the Commissioner indicated in SSR 83-10 that "sitting should generally total approximately 6 hours of an 8-hour workday" in the context of sedentary work, and the record clearly supports finding that plaintiff was limited to sitting for at most two hours in an eight-hour day, plaintiff was obviously precluded from such work.

The ALJ erred in failing to pose an appropriate hypothetical to the vocational expert, and in relying on the vocational expert's opinion when that opinion was not based on a full and complete list of plaintiff's impairments as found in the RFC. Therefore, that error was not harmless, and the Commissioner's decision at step five was not supported by substantial evidence.

**B.**

Plaintiff next argues that the ALJ failed to properly weigh the medical evidence and failed to properly consider plaintiff's onset as required by Social Security Ruling 83-20. These two arguments will be dealt with in turn.

In the Fourth Circuit, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

12

evidence in the record." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (citing 20 C.F.R §

416.927).  As the ALJ found that Dr. Farooque was a treating physician of plaintiff, his opinions

must be given controlling weight and adopted if both conditions are met.  R. at 38-39; SSR 96-2p

(July 2, 1996).  If the ALJ finds that either of these conditions is not met, the "opinions are still

entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527

and 416.927."[4]  SSR 96-2p.  In assigning weight to the opinions of treating sources, the ALJ was

required to provide "specific reasons" for the weight given, which must be "supported by the

evidence in the case record...."  *Id*.

Looking to the ALJ's opinion here, with regard to Dr. Farooque's report of January 26,

2006, wherein he described plaintiff as "disabled," the ALJ gave "significant weight" to Dr.

Farroque's opinion regarding plaintiff's restrictions, except to the extent he found plaintiff

disabled.  R. at 40.  The ALJ assigned this opinion "no weight," and the only reason he provided

for this was that a finding that plaintiff is "disabled" is a determination "reserved to the

Commissioner of Social Security."  *Id*.  With regard to Dr. Farooque's report of April 2, 2007, the

ALJ gave it only "some weight," and accepted only the doctor's opinion that plaintiff was limited

in her ability to push and pull.  R. at 41.  The ALJ refused to accept the remainder of Dr.

Farooque's opinions in that report, stating merely that his findings were "inconsistent with the

evidence of record as a whole."  *Id*.  How this analysis fits into the Fourth Circuit's framework is

---

[4] The non-exclusive list of factors that an ALJ is obligated to consider in this circumstance
includes: 1) the length of the treatment relationship and the frequency of examination; 2) the nature
and extent of the treatment relationship, including the treatment provided and the kind of
examination or testing performed; 3) the degree to which the physician's opinion is supported by
relevant evidence; 4) consistency between the opinion and the record as a whole; 5) whether or not
the physician is a specialist in the area upon which an opinion is rendered; and 6) other factors
brought to the Commissioner's attention which tend to support or contradict the opinion. 20 CFR
§§ 404.1527, 416.927; *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006).

not apparent.

The ALJ mentioned in passing two reports which may have been intended to serve as "specific reasons" for assigning Dr. Farroque's opinions less than full weight.  They are an x-ray report from February 1, 2007, and an MRI report from March 6, 2007.  R. at 39, 492, 566.  The x-ray report showed no compression fracture or subluxation, that plaintiff's disc spaces were preserved, and that there was no scoliosis.  R. at 39, 566.  The MRI report showed a mild amount of spondylosis in the mid to lower T-spine, and mild disc bulging, but no cord compression or definite disc herniation or central stenosis.  R. at 39, 492.  However, Dr. Farooque's report of April 2, 2007 specifically refers to both of these medical reports as the basis for his findings on that date.  R. at 521.  Therefore, as the ALJ is not a medical expert, he was not in a position to find that these reports constituted substantial medical evidence that was wholly inconsistent with Dr. Farooque's opinions such that Dr. Farooque's opinion was not entitled to full weight.  *See Wilson v. Heckler*, 743 F.2d 218, 221 (4th Cir. 1984) (finding that "the ALJ erroneously exercised an expertise he did not possess" by interpreting clinical medical findings).

The ALJ at no point found that Dr. Farooque's opinions were not supported by appropriate clinical and objective evidence, and the ALJ failed to support his findings that the doctor's opinions were inconsistent with other substantial medical evidence in the record with the requisite specific reasons.  This alone would be sufficient reason for this court to find that the ALJ failed to properly weigh the medical evidence.

However, even assuming the ALJ were correct in this finding, the ALJ also failed to consider the factors provided in 20 CFR §§ 404.1527 and 416.927 as required by SSR 96-2p.  *Hines*, 453 F.3d at 563.  Reviewing these factors, the magistrate judge again finds that Dr. Farooque's opinion was at least entitled to deference, even if the ALJ was not obligated to accept it

14

in whole.  First, Dr. Farooque began treating plaintiff on October 4, 2005 and treated plaintiff regularly since that time, seeing plaintiff at least eight times between then and plaintiff's date last insured.  R. at 175-181, 433, 436, 520.  Second, the nature of treatment and examination provided by Dr. Farooque was consistent with plaintiff's conditions.  Third, Dr. Farooque based his medical opinions on diagnostic testing that supported his opinions.  R. at 521.  Fourth, Dr. Farooque's opinions appear to be generally consistent with the record as a whole, which the ALJ admitted in his opinion, while refusing to accept that plaintiff's exertional limitations were as severe as Dr. Farooque described.  R. at 41.

Dr. Farooque found in a Fibromyalgia Impairment Questionnaire dated April 2, 2007, that plaintiff was limited to sitting for 1 hour, standing/walking for 2 hours, frequently lifting up to 5 pounds and occasionally carrying up to 10 pounds in an 8-hour competitive workday on a sustained basis, as well as needed to avoid temperature extremes, humidity, heights, pushing, pulling, kneeling, bending and stooping, and that she was "incapable of even 'low stress' jobs."  R. at 523, 525.  Those findings by Dr. Farooque are at least entitled to deference.

When such a hypothetical claimant was posed to the vocational expert, the vocational expert found that there would be no work for such a hypothetical claimant.  R. at 652.

Based on the forgoing, it is clear that the ALJ failed to properly weigh the opinion evidence from treating physician Dr. Farooque, and in so doing failed to evaluate plaintiff's RFC correctly. The limitations described by Dr. Farooque were at least entitled to deference, and the ALJ erred in giving them only "some weight."[5]

---

[5] While Dr. Farooque stated in the April 2, 2007 report that the limitations described applied back to October 4, 2005, it is clear that this is not the case, as the limitations Dr. Farooque described in his report dated January 26, 2006 are significantly less severe.  R. at 448.  Specifically, Dr. Farooque's opinion from January 26, 2006 found that plaintiff could work with limitations, and

Reviewing the ALJ's analysis of Nurse Stark's opinions, the ALJ found Nurse Stark's opinion in the medical questionnaire dated March 21, 2007 was entitled to only "some weight." R. at 40. The ALJ accepted Nurse Stark's assessment of plaintiff's RFC, but found that plaintiff's "mental limitations were not as severe as Ms. Stark indicated...." R. at 40-41. The ALJ merely stated that Nurse Stark's opinion was "inconsistent with the record from May 2004 to November 2008." R. at 41. The ALJ provided no specific facts or analysis to support these findings. Nonetheless, the ALJ gave "significant weight" to the opinions from Nurse Stark rendered on December 1, 2008, but for some reason only to the extent it applied going forward from the date that opinion was rendered. R. at 43. The ALJ stated no reason for his different treatment of these two opinions, and provided no specific facts to undergird his finding that one opinion was entitled to "significant weight," while the other was only entitled to "some weight."

While Nurse Stark's opinions are not entitled to the same weight as those of a treating physician (*see* n. 1), still her opinions as a medical treating provider "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR-06-03P. Specifically, the ALJ should have analyzed Nurse Stark's opinions using the factors provided by SSR-06-03P: "How long the source has known and how frequently the source has seen the individual; How consistent the opinion is with other evidence; The degree to which the source presents relevant evidence to support an opinion; How well the source explains the opinion; Whether the source has a specialty or area of expertise related to the individual's impairment(s); and Any other factors that tend to support or refute the opinion." *Id*. Considering these factors, "an opinion from a medical source who is not an 'acceptable medical source' may

---

possibly most importantly that plaintiff was not limited to sitting for less than one hour at a time. R. at 449.

outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating

source. " *Id*. Therefore, the ALJ erred in failing to properly consider Nurse Stark's opinion

evidence.

After considering these factors, the magistrate judge finds that Nurse Stark's opinions were

entitled to deference, even though the ALJ was not obligated to accept them in their entirety. First,

Nurse Stark began treating plaintiff on March 13, 2006, and saw plaintiff on a weekly or bi-weekly

basis thereafter. R. at 154, 506, 529. Second, Nurse Stark's opinions appear consistent with the

evidence in the record showing a general trend toward increased mental limitations on the part of

plaintiff over time.[6] Third, Nurse Stark's opinions are well articulated and the basis for her

findings is explained in the reports. R. at 159-160, 491, 534-536. Finally, Nurse Stark is a mental

health specialist, and she is an Advanced Practice Registered Nurse (APRN) with a Psychiatric

Mental Health Clinical Nursing Specialty (PMHCNS). R. at 544.

Indeed, as plaintiff argues, while there are differences between Nurse Stark's opinions of

March 21, 2007 and December 1, 2008, there are also notable similarities. Nurse Stark found in

her report of March 21, 2007, that plaintiff was markedly limited (defined as effectively precluded

from performing the activity in a meaningful manner) in her ability to perform activities within a

schedule; maintain regular attendance and be punctual within customary tolerance; sustain ordinary

routine without supervision; work in coordination with or proximity to others without being

---

[6] This assessment is based on a Psychiatric Review Technique Form from January 6, 2006 (discussed at page 39 of the ALJ's opinion, but it is unclear where this exists in the record) finding that plaintiff had only mild restrictions in various areas, as compared to an assessment by Dr. Roy Wilensky from August 8, 2009 assigning plaintiff a GAF score of 50. R. at 39, 185. Again, a GAF score of 50 indicates "serious symptoms (e.g.. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *DSM* at 34.

distracted by them; make simple work-related decisions; complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the workplace. R. at 532-533.

Nurse Stark found the same marked limitations in her report of December 1, 2008, and she indicated that plaintiff's "symptoms and limitations have been ongoing for years." R. at 161. Nurse Stark did find additional marked limitations in this report, however, including marked limitations in plaintiff's ability to: remember locations and work-like procedures; understand and remember detailed instructions; carry out simple one or two-step instructions; carry out detailed instructions; maintain attention and concentration for extended periods; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and set realistic goals or make plans independently. R. at 157-159. On this basis, Nurse Stark assigned plaintiff a GAF score of 40 on December 1, 2008.[7] R. at 154. This is as compared to Nurse Stark's assigned GAF score of 55 on March 21, 2007. R. at 529.

Therefore, while it appears that plaintiff's mental condition deteriorated between March 14, 2007 and December 1, 2008, there is no reason to assume that plaintiff's mental condition did not worsen at some point between March 14, 2007 and June 30, 2007 (plaintiff's date last insured), as

---

[7] Again, a GAF score of 40 indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." *DSM* at 34.

there are no progress notes from Nurse Stark or any other mental health provider in the record between March 14, 2007 and March 4, 2008.[8]  The ALJ conveniently assumed that Nurse Stark's opinion rendered in her report of December 1, 2008 was a bright line indicating the sudden onset of plaintiff's lower level of functionality, but without a GAF assessment for over twenty months this is not a supportable assumption.  Therefore, the ALJ erred in failing to consider this issue in making his determination as to when plaintiff became disabled.

Looking to Nurse Stark's opinion of March 21, 2007, when the limitations described therein were provided to the vocational expert as a hypothetical claimant, the vocational expert admitted such an individual would be precluded from all work.  R. at 652-653.  As the ALJ erred in not appropriately weighing Nurse Stark's opinion evidence and thus not finding an appropriate RFC, the ALJ's opinion is not based on substantial evidence.

## C.

Finally, plaintiff argues that the ALJ failed to properly evaluate plaintiff's credibility by both 1) applying an incorrect legal standard, and 2) failing to support his credibility determination by substantial evidence.

As an initial matter, and as discussed above, plaintiff testified at the hearing before the ALJ on November 5, 2009, about her symptoms and limitations as of the time of the hearing, but not as of any time prior.  The ALJ did not question plaintiff, and thus she provided no testimony, regarding the period prior to her date last insured of June 30, 2007, or indeed regarding her symptoms and limitations as of December 1, 2008.  Therefore, the magistrate judge finds that

---

[8] Indeed, as discussed above, Nurse Stark indicated in her report of December 1, 2008 that plaintiff's condition had severely deteriorated as a result of finding out about the abuse of her son, which she learned about in January 2007.  R. at 154, 643.

plaintiff's testimony is irrelevant as to the question of whether plaintiff was disabled prior to the date of the hearing, November 5, 2009. Additionally, as noted above, the record lacks a transcript of plaintiff's testimony at the initial hearing before the first ALJ, which took place on May 14, 2007. Even if this testimony had been part of the record, however, the ALJ could not have evaluated plaintiff's credibility regarding her prior statements before a different ALJ. The magistrate judge therefore finds that the ALJ had no basis for his finding that plaintiff's "statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible prior to December 1, 2008, to the extent of the residual functional capacity assessment referenced above." R. at 38.[9]

To the extent that plaintiff's testimony at the November 5, 2009 hearing might have some relevance, the ALJ failed to apply the correct legal standard and failed to effectively support his finding regarding plaintiff's credibility with clear evidence.

The ALJ was required to undertake the two-step process established by the Fourth Circuit: 1) analyze the medical evidence in the record to determine whether the underlying medical impairment could reasonably cause the claimant's symptoms; and 2) if the ALJ finds the underlying medical impairment could reasonably cause the claimant's symptoms, he must then evaluate the

---

[9] Plaintiff also argues on page 27 of the memorandum in support of this motion that plaintiff's "testimony on her conditions was entirely consistent with the symptoms and limitations reported by all the treating and examining sources," as "there is no evidence her activities declined significantly at any time since her onset date." As discussed above, there is evidence that plaintiff's condition declined and thus her limitations increased during the relevant period. In fact, plaintiff testified at the most recent hearing on November 5, 2009, that her pain and her mental condition had gotten "worse" since the alleged onset in 2004, so this argument lacks merit. R. at 642-643, 645. Therefore, as plaintiff's condition had deteriorated and she testified as to her current activities and limitations as of November 5, 2009, which was two and one half years after her date last insured and nearly one year after the date as of which the ALJ found her disabled, her testimony at that point is not relevant to the question of whether plaintiff was disabled prior to her date last insured, or as of December 1, 2008.

claimant's statements with regard to the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. *Little v. Colvin*, 2013 WL 2489173 at *3 (E.D. Va. June 7, 2013) (citing *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir.1996)); SSR 96–7p, 1996 WL 374186 (July 2, 1996) (clarifying 20 CFR 404.1529(c)(4) and 416.929(c)(4)).  If a claimant has provided the requisite medical evidence to support a finding that the underlying medical impairment could reasonably cause the claimant's symptoms, the claimant is entitled to rely solely on subjective evidence of pain in the second step.  *Hines*, 453 F.3d at 565.  However, if the ALJ finds in the second step that the claimant's statements are not supported by objective medical evidence, the ALJ must make a credibility determination with regard to the claimant's subjective statements based on the entire record.  *Little*, 2013 WL 2489173 at *3; SSR 96–7p.  This determination must include "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96–7p.[10]

The ALJ found in step one that plaintiff's "medically-determinable impairments could reasonably be expected to cause the alleged symptoms."  R. at 38.  However, in step two the ALJ

---

[10] The required factors include, in addition to the types of evidence described in 20 CFR 404.1529(c) and 416.929(c): 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  SSR 96–7p.

found that plaintiff's "statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible prior to December 1, 2008, to the extent of the residual functional capacity assessment referenced above." *Id*.  The ALJ stated further that, "[p]rior to the established onset date, the claimant's complaints regarding the frequency, severity, and duration of her fatigue and pain are inconsistent with the objective medical evidence and other evidence of the record. The claimant's complaints also do not justify any further limitations than those set forth in the established residual functional capacity." R. at 39.  In support of this finding, the ALJ found that the objective imaging of plaintiff's spine from February 1, 2007, and March 6, 2007, did not show her conditions were severe enough to substantiate the limitations alleged, that in October 2005 plaintiff was found to have full grip strength and minimal bony proliferative changes, and that the psychiatric treatment records from Nurse Stark did not support the mental limitations alleged. R. at 39.  The ALJ also found that "claimant's physical examinations were consistently unremarkable," and that "[a]lthough claimant reported at the hearing that she had side effects from her medications, including nausea, irritability, and mood problems, claimant reported no continuous side effects from her medications to her treating provider, Ms. Stark, or to her other treating providers." *Id*.

The ALJ's analysis of plaintiff's credibility is flawed, in that at step two in the analysis, the ALJ erred by applying the wrong legal standard.  The ALJ was required to consider, pursuant to 20 C.F.R. § 404.1529(c)(4), whether plaintiff's statements regarding her alleged symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence" in the record.  The ALJ was not permitted to compare plaintiff's alleged symptoms to the RFC he had apparently already found, but rather was required to compare plaintiff's statements to "the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4).  While the ALJ stated pro forma that such an appropriate comparison was made and indicated certain evidence he

found undermined plaintiff's testimony, he also twice indicated that he compared plaintiff's alleged symptoms to "the residual functional capacity assessment referenced above" and "the established residual functional capacity."  R. at 38-39.

The boilerplate language used by the ALJ here and the inappropriate weighing of plaintiff's statements against the RFC instead of the evidence are issues apparently seen in various courts.  In *Little*, the court found the 7th Circuit's analysis in *Bjornson v. Astrue*, 671 F.3d 640, 644–645 (7th Cir. 2012) (Posner, J.) highly applicable, and even found that the use of boilerplate language nearly identical to that used here "call[ed] into significant question whether the proper decisional process was undertaken by the ALJ in both reaching his Residual Function Capacity determination and evaluating the Plaintiff's credibility."  2013 WL 2489173 at *4.[11]  The 7th Circuit found in *Bjornson* that, where an ALJ finds a claimant's statements less than fully credible on the basis of the ALJ's own RFC determination, such an analysis "gets things backwards."  671 F.3d at 645-646.  In both cases, while the ALJ had provided some evidence to support the conclusion reached, the court reversed and remanded the decision of the ALJ.

The language used by the ALJ here is similarly boilerplate and raises significant concerns about his decisional process.  The magistrate judge finds that the ALJ applied an incorrect legal

---

[11] The language used by the ALJ in *Bjornson* was: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments would reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  671 F.3d at 644–645.  The ALJ in *Little* said, "After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms and that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  2013 WL 2489173 at n. 3.

standard in weighing plaintiff's statements and assessing her credibility in light of the RFC he had already established.

The ALJ also failed to support his findings regarding plaintiff's credibility with clear evidence in compliance with SSR 96–7p.  The ALJ outlined the relevant portions of plaintiff's testimony, when dismissing that testimony as "not credible prior to December 1, 2008," and the ALJ provided some evidence that he found to be inconsistent with plaintiff's testimony.  R. at 38-39.  The ALJ noted the following in support of his finding: an opinion of Dr. Scott Ross dated August 5, 2004; an examination of plaintiff's spine on February 1, 2007; an MRI of plaintiff's thoracic spine dated March 6, 2007; a physical examination from October 18, 2005; a Psychiatric Review Technique Form dated January 6, 2006; an RFC evaluation by a State Agency consultant from January 6, 2006; and generally the ALJ's findings regarding the opinion evidence of Nurse Stark and Dr. Farooque and the weight it should be assigned, discussed above.  R. at 38-41.

The magistrate judge finds that the opinion of Dr. Scott Ross from August 5, 2004; the physical examination from October 18, 2005; the Psychiatric Review Technique Form dated January 6, 2006; the RFC evaluation by a State Agency consultant from January 6, 2006; and the opinion evidence of Nurse Stark and Dr. Farooque prior to December 1, 2008 are simply too far removed from plaintiff's testimony in November of 2009 to have any bearing on the credibility of plaintiff's statements regarding her alleged symptoms at that time, or regarding her symptoms as of December 1, 2008 for that matter.  Also, as for the ALJ's findings regarding the opinion evidence of Nurse Stark and Dr. Farooque, these findings were discussed above, and the magistrate judge found that they were not supported by substantial evidence.  Again, as discussed above, the examination of plaintiff's spine on February 1, 2007, and the MRI of plaintiff's thoracic spine dated March 6, 2007 were considered by Dr. Farooque in making his findings, which are consistent

24

with plaintiff's alleged symptoms.  R. at 521.  Therefore, neither these reports, nor the reports of

Dr. Farooque and Nurse Stark supports the ALJ's findings regarding plaintiff's credibility.  Also

neither plaintiff's testimony nor the evidence the ALJ cited in undermining it supports the ALJ's

finding of an onset date of December 1, 2008.

Based on this, the magistrate judge finds that the ALJ failed to appropriately consider the

factors as required by SSR 96–7p, and failed to support his finding regarding the credibility of

plaintiff's statements about her alleged symptoms with substantial evidence when coming to the

conclusion that plaintiff's testimony was less than fully credible prior to December 1, 2008.  R. at

41.

## V.

Having found each of plaintiff's assignments of error well taken, the magistrate judge finds

that for the foregoing reasons the ALJ's opinion was not supported by substantial evidence, and

that the ALJ failed to apply the correct law in rendering his decision.

Each of the errors found is of a type that might normally result in remand.  However, as to

the errors discussed in Section IV(B) above, it is clear in the circumstances of this case that remand

is not appropriate, because plaintiff is clearly entitled to disability benefits.  In that section, the

magistrate judge found that the ALJ erred in failing to give appropriate weight to the opinions of

plaintiff's treating physician Dr. Farooque and treating mental health provider Nurse Stark.  At the

most recent hearing, the limitations described in both Dr. Farooque's report of April 2, 2007 and

Nurse Stark's report of March 21, 2007 were posed separately to the vocational expert, who

indicated that a hypothetical claimant with either of these sets of limitations would be precluded

from all work.  R. at 652-653.  As of the date of the latter report, on April 2, 2007, plaintiff's

25

limitations would have included a combination of both the physical limitations described by Dr. Farooque and the mental limitations described by Nurse Stark.  In light of this, and the opinion rendered by the vocational expert, there is no question that plaintiff was disabled as of April 2, 2007.

Even if the magistrate judge's analysis of that award vs. remand issue were viewed as incorrect as to the one error in isolation, clearly the confluence of the three errors here, after three hearings and two remands at the administrative level, makes it appropriate here not to remand for further proceedings, but rather to reverse the ALJ's decision and order the award of benefits.  *See Vitkek v. Finch*, 438 F.2d 1157, 1160 (4th Cir. 1971).  Here, as in *Vitek,* the ALJ's decision is in clear disregard of the overwhelming weight of the evidence.  Here, as in *Windsor v. Astrue,*, 1:10cv635 (E..D. Va. 2010), "the process to date has been a long one and the Commissioner had an ample opportunity to create the record it wished...." *Id*. at 21.

Accordingly, the magistrate judge recommends that defendant's motion for summary judgment be denied and plaintiff's motion for summary judgment be granted with an award of Social Security disability income benefits from April 2, 2007, and Supplemental Security Income benefits from April 2, 2007.


                                                    /s/
                                    Thomas Rawles Jones, Jr.
                                    United States Magistrate Judge


Alexandria, Virginia
August 12, 2013